## CITY OF DRUMRIGHT v. McCORMICK.

No. 16596—Opinion Filed April 6, 1926.

Rehearing Denied June 15, 1926.

1. **Municipal Corporations—Sewer Improvements—Abutting City Property Assessable for Benefits but not Subject to Lien.**

Where a city, by its duly constituted governing body, establishes a "sewer district, adjoining to or upon which the city's property abuts, and such · property is under the law properly assessable for the benefits flowing there.rom and sewer warrants are issued against such property, the owner or holder of such warrants cannot enforce his lien against such public property and cause the same to be sold for such special tax."

2. **Same—Personal Judgment Against City as Remedy of Holder of Sewer Warrants.**

Where a city establishes a sewer district adjacent to public property, and levies a special assessment against such property and issues its public improvement warrants against the property assessed for such improvements, an action for personal judgment against such city is maintainable by the holder and owner of such warrants.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by F. P. McCormick against the City of Drumright to recover the amount represented by certain sewer warrants issued by the defendant against certain real property owned by defendant, and representing the assessments levied against the property as the cost of constructing a sewer. Judgment for plaintiff, and defendant appeals. Affirmed.

S. A. Denyer, for plaintiff in error.

Leroy J. Burt, for defendant in error.

Opinion by RUTH, C. Plaintiff and defendant will be referred to as they appeared in the trial court.

Defendant, by regular proceedings as provided by the laws of the state, established a sewer district in the city of Drumright, and the contract for the construction of the sewer was entered into between plaintiff and defendant, and plaintiff proceeded to construct his sewer and the work was formally accepted by the city. This sewer was constructed adjacent to, and was intended to serve, lots 1 to 24, inclusive, in block 35, M. Jones addition to the city of Drumright, and lots 14 and 15 in block 1, Broadway addition to said city, and other lots not involved in this action. The warrants issued against the lots here involved aggregated $2,356.83, and provided for 8 per cent. interest, and were payable in three equal payments, one-third due December 15, 1919, one-third due December 15, 1920, and one-third due December 15, 1921. The defendant, prior to the issuance of the warrants, accepted a deed to these lots from M. Jones, for park purposes, the deed containing the following clause:

"Yet, however, upon the following condition: that is to say, if the said premises shall at any time cease to be used as a children's playground, or city park, the title thereto shall revert in the grantor, and the title of grantee cease and determine."

This deed included all of block 35, M. Jones addition (being lots 1 to 24, both inclusive), and was executed and delivered June 23, 1919, and defendant caused the same to be duly recorded on June 30, 1919. The record does not disclose how defendant acquired title to lots 14 and 15 in block 1, Broadway addition, but it is not denied that defendant is the owner thereof. On July 15, 1923, there was due on said warrants, principal and interest amounting to $2,-867.65, for which sum plaintiff prays judgment, plus 8 per cent. interest from the last said date. M. Jones and wife and others were subsequently made parties defendant, M. Jones having a reversionary interest in the lands. Defendant filed its answer, which contained a demurrer to "that portion of plaintiff's petition and amended petition wherein plaintiff prays for personal judgment against the defendant city," and the answer further contains a general denial.

It developed that a two-fifths interest in this land was owned by two full-blood Indian heirs, which interest was sold to George Pelsey, who was made a party defendant by amended petition.

The cause was tried to the court without the intervention of a jury. The amount then due, including principal and interest, was $2.921.04, and plaintiff was awarded judgment for three-fifths of this amount, or $1.750.60, and defendant city of Drumright appeals and assigns as error:

"That the evidence is insufficient to base a judgment upon, for two reasons: (A) That the court found the lots were controlled, in possession of, and used by the city of Drumright, and (B) the evidence is insufficient for that it does not show the plaintiff was deprived of the right to take the property to satisfy his lien thereon."

Defendant admitted in open court it received and accepted and recorded the deed,

but that sometime thereafter (about 6 months) it discovered the defendant Palsey owned a two-fiths interest, and it, the city, decided not to do anything with or make any use of the property, and offered to execute a quit-claim deed to the property to the plaintiff. This constitutes the defense of the defendant. It is tacitly conceded that the real property of a municipal corporation cannot be sold at a forced sale for taxes levied against it by reason of a special assessment for public improvements, but defendant contends this does not apply when the municipality raises no objection to the sale, and offers to convey by deed, the municipality's real property to the holder of the tax warrants.

Our attention has not been directed to any law authorizing city officials to consent to its real property being sold for taxes, and we know of no such law, nor has our attention been directed to any statute or decision of this state, authorizing officers to give away public property, or force a citizen to take title to the same and cancel his claims against the municipality. The deed tendered plaintiff was wholly worthless, by reason of the reversionary clause, and its tender was no more than a request to plaintiff to dismiss his action with prejudice, to present the city with $1,752.60 worth of sewer warrants and receive nothing in return.

This court in City of Sapulpa v. Land, 101 Okla. 22, 26, 223 Pac. 640, said:

"It is, therefore, our conclusion that taxes in this state must be assessed and collected pursuant to and under the authority of general laws enacted by the Legislature."

The Legislature not having provided any method whereby the property of a city may be sold by the holder of public improvement, i e., sewer, warrants, and such being repugnant to our form of government and against public policy, it becomes the bounden duty of the city authorities, after they have established a sewer district. through and around or adjacent to public property, and issued sewer warrants against the same, to provide in their annual budget for a levy sufficient to pay and retire such warrants as the same fall due, and the city cannot escape its liability by offering to deed city property to the holder of such warrants. It being against public policy to sell public lands for taxes, the holder of such warrants may not foreclose his lien against the land, but must resort to the courts to obtain a personal judgment against the city. If the contractor is denied the right to foreclose his lien by the forced

sale of public lands, and is denied the right of a personal judgment against the city, to be paid as other judgments are provided for and paid, our public buildings must of necessity be without pavements and sewers, unless a way be found to establish and declare paving and sewer districts not adjacent to or abutting upon any other property, and to provide for payment of such improvements out of the general revenues.

Page & Jones on Taxation by Special Assessment, vol. 2, sec. 1075, citing authorities, says:

"Property belonging to a public corporation, and used for public purposes, such as property belonging to a city, or a township, may be subject to assessment.

"It has been held that property belonging to a city, and used for public purposes, cannot be sold to satisfy an assessment. The remedy is to render a general judgment against the city for the amount of the assessment; and this procedure is held to be valid even in jurisdictions in which a personal judgment cannot be rendered against a private landowner, in cases where his land is subject to a lien of an assessment."

In a Kansas case, the city of Ottawa had paved around the county courthouse, and had levied a special assessment against the property belonging to the county to pay for the improvement. The county commissioners refused to pay the assessment, and action was filed against the county commissioners, and upon appeal in Board of Commissioners of Franklin Co. v. City of Ottawa, 31 Pac. 788, the Kansas court said:

"A courthouse cannot be sold or disposed of under tax proceedings or at forced sale for special assessments or taxes levied upon the ground thereof. Such grounds are for the uses and purposes of the public, and are essential to the administration of the executive and judicial duties of the county and state, and therefore are not subject to sale for taxes, or upon judgments rendered against the county. Perhaps it ought to be assumed, when a special assessment is made in accordance with the provisions of the statutes for the opening or improvement of a public street, that the officials of the county would allow and provide for the payment of the same without any action or other legal proceedings being necessary. It is presumed that the sovereign or state will do no wrong. If a county, however, refuses to pay the special assessments or taxes legally levied against the property, as such property, on account of the public uses to which it is applied, cannot be sold at a tax or other forced sale, there is no impropriety, after the claim is disallowed, in permitting the district court, on appeal, to adjust the

amount thereof. The judgment can then be paid as other judgments against a county. * * * Such rule, it seems to us, would be beneficial to all concerned, will work no hardship upon any one, and permit the streets and sidewalks around public grounds to be improved and repaired as the statute prescribes, and in an equitable manner." Citing Cooley on Taxation, 572 & 573 and other cases.

See, also, Oakland Independent School District v. Howett, 105 Iowa, 663, 75 N. W. 497.

It would be unjust and inequitable to permit municipal authorities to establish improvement districts adjacent to or abutting upon public property, as provided by law, and to provide no means for the collection of the debt incurred thereby.

We are therefore, of the opinion, and so hold, that when a municipality establishes an improvement district, the proceedings to establish such district and assess the benefits being had as provided by law, and issues its public improvement warrants against the public property properly assessable for such improvements, an action is maintainable against such municipality for a personal judgment by the owner and holder of such warrants.

Finding no error in the record, and that the judgment is sustained by the evidence. the judgment of the trial court is affirmed.

By the Court: It is so ordered.