The first question presented involves the amount of levy, in addition to other levies, which the taxing officials may make under chapter 27, S. L. 1933, when the sinking fund does not equal the accrual liabilities.
The section provides:
"It shall be the duty of the officers of each municipal corporation in the state of Oklahoma by law authorized to levy taxes to make a levy each year for a sinking fund, which shall, with cash actually on hand and investments in such fund, excluding taxes in process of collection, be sufficient to pay all bonded indebtedness of such municipality coming due during the following years. * * * *Page 441 
When any municipal corporation shall in any fiscal year omit to make a levy which could have been validly made, for any judgment, bonds, or interest coupons, or where the sinking fund does not equal the accrual liabilities, it is, in the following years, hereby authorized and empowered to make, in addition to all other levies, such a tax levy as will, by the maturity dates thereof raise a fund sufficient to pay the obligations when due. * * *"
The excise board made an additional levy on account of the deficit sufficient to raise $9,917.60 for the fiscal year involved. The protestant alleges that levy to be excessive, and the judgment of the Court of Tax Review decreased the levy to produce the sum of $5,577.
The protestant contended, in substance, that the first deficit levy under the 1933 Act could and should have been made in 1933; and that the amount levied in 1938 should be calculated as if the permissible amount had been levied for each year from 1933 to 1938. We find, however, that the act does not purport to fix the year when the first of such deficit levies must be made. Nor do we find anything in the act to support the above stated contention. The sole prerequisite to the levy is that there must be, at the time such levy is sought to be made, a deficit in the sinking fund. In this case we have such condition. At the time this deficit levy was made there was a condition "where the sinking fund does not equal the accrual liabilities," in which event such municipalities, in the language of the state, "is, in the following years, hereby authorized and empowered to make, in addition to all other levies, such tax levy as will, by the maturity date thereof, raise a fund sufficient to pay the obligations when due."
The protestant relies upon Excise Board of Stephens County v. Chicago, R.I. P. Ry. Co., 168 Okla. 523, 34 P.2d 268, as supporting its contention above stated. In that case we considered a first such levy made in 1933, and that was the first levy permissible under the act, but the real question involved was whether the 1933 Act was violative of the Constitution. The language in that opinion which protestant here relies upon was not necessary or pertinent to the exact question there involved and is dicta. It is, therefore, not authority for protestant's contention here. We need only to refer to the act and consider its purpose to see that the present contention cannot be sustained.
An examination of the 1933 legislative act would seem to clearly indicate an intent on the part of the Legislature as concerns unmatured indebtedness to provide for additional levies of equal amount annually to replenish a depleted sinking fund to the extent at least that the indebtedness may be paid when due. It is also equally apparent that no greater additional or deficit levy should be made in any one fiscal year than is necessary to provide sufficient cash in the sinking fund to meet the obligations when due. The calculation of the minimum amount for such purpose will be governed by the problem presented by the detailed condition of the sinking fund in each particular case, and may vary at different tax levying periods.
The trial record here discloses the outstanding bonds of the county, dates of issue, annual accruals, and maturing dates. From this data the present deficiency may be calculated, as well as the number and amount of equal annual levies necessary to make up the deficiencies so as to be able to pay the maturities as they occur in the future. If the levy made is more than sufficient to accomplish that result, then it is excessive, otherwise not.
In this case, a calculation of the needs of the sinking fund, considering the money on hand and the present deficit, extending the levy made by the excise board for 1938, and calculating on the basis of a similar extra levy for each succeeding year to the maturities here necessary to be provided for, demonstrates that the amount to be raised for 1938 by such levy, $9,917.60, is not excessive. On the other hand, it is in fact not large enough, though assuming full collection of this extra levy and full collection of each regular annual levy for future annual accruals. A similar calculation using the protestant's figure of $5,577 for the extra levy falls far short of being sufficient to accomplish the purpose of the act. Under such circumstance, the extra levy as made by the excise board is not excessive, and the protest thereto is denied.
The other question presented involves the validity of levies to pay certain judgments. It is contended that the judgments were taken under the rules of law announced in the case of Smartt v. Board of Com'rs of Craig County, 67 Okla. 141,169 P. 1101, and after seeking appropriations for the purposes as discussed in Protest of Kansas City Southern Ry. Co.,157 Okla. 246, 11 P.2d 500, and Protest of Cities Service Gas Co. et al.,162 Okla. 131, 19 P.2d 546. The judgment rolls here show conformity with the rules announced in the two last hereinabove cited cases regarding the necessity of seeking supplemental appropriations before the assertion of the rules of the Smartt Case, supra, and *Page 442 
it remains only for us to determine whether such rules apply as to the items for which the judgments were rendered.
The record here shows that some of the judgments were based in part upon fees and expenses earned and paid out by the sheriff in the discharge of duties imposed upon him by the Constitution and the laws of the state, to wit, for transporting prisoners and insane persons to various institutions of the state, and for serving process which it is his mandatory duty to serve. It is not pointed out in the briefs wherein the sheriff could have lawfully refused to perform the duties and refused to have incurred the expense involved. It appears that had he done so he would have subjected himself to severe penalties under the law. We therefore think as to those judgments the Smartt Case, supra, is applicable and controlling. We quote the first paragraph of the syllabus thereof as follows:
"Moneys lawfully expended by a sheriff in the feeding of prisoners and fees earned by him in the discharge of duties imposed upon him by the Constitution and laws of the state constitute a valid charge against the county, and are not within the limitations imposed upon the county by section 26, art. 10 (section 291, Wms. Anno.) Constitution."
Our attention is called to the following language employed in the case of Protest of Kansas City Southern Ry. Co., supra:
"In the case at bar the office of sheriff was created by the provisions of section 2, article 17, of the Constitution. While the Legislature is authorized to change the provisions of that section, it has not done so. The sheriff's salary is fixed by legislative enactment and not by the provisions of the Constitution. His mileage and his expenses are fixed by legislative enactment. Those items are not within the rule herein stated, and, as to those items, he may recover only where there is a valid appropriation sufficient to cover the amount thereof."
And it is said that such language is definite authority for the proposition that this court has held that the fees and mileage of the sheriff are never within the rule of the Smartt Case, supra.
We observe therein that the theory of law announced in the Smartt Case, supra, is reaffirmed, restricting its applicability, however, to cases where proper efforts have been made to obtain appropriations, and it is entirely probable that some fees and expenses of the sheriff may not come within the rule of the Smartt Case, but we do not believe that the court intended such quoted language to apply in its broadest possible interpretation, otherwise it would mean nothing other than the overruling of the Smartt Case, which it is evident was not thereby intended.
Another of the judgments is based upon a judgment in favor of a telephone company for service furnished the sheriff's office in excess of appropriations, and all essential facts are disclosed by the judgment roll. We know of no law making it the mandatory duty of a sheriff to obtain telephone service, and we have before us no authority to the effect that he would be visited with punishment or penalties if he does not do so. We therefore hold that judgment to be void on its face under Protest of Gulf Pipe Line Company of Oklahoma, 168 Okla. 136,32 P.2d 42, and cases therein cited, and Protest of Kansas City Southern Ry. Co., supra.
The Court of Tax Review sustained the protest as to the levies for all the judgments here involved. That judgment was correct as to the levy for the telephone company judgment, and to that extent is affirmed. However, that judgment as to the levies for the other judgments was erroneous and is reversed, and to that extent the protest is denied.
Therefore the judgment of the Court of Tax Review is affirmed in so far as the protest was sustained as to that part of the levy to pay the telephone company judgment, and in all other respects is reversed and the protest denied.
BAYLESS, C. J.., and OSBORN, CORN, DAVISON, and DANNER, JJ., concur.
GIBSON and HURST, JJ., concur in the rules of law announced in paragraphs 1, 2, and 4 of the syllabus, and in the opinion in so far as denying the protest to the levy made pursuant to chapter 27, S. L. 1933, and in so far as sustaining the protest to the levy to pay the telephone company judgment, but dissent to the rule of law announced in paragraph 3 of the syllabus, and to that part of the opinion denying protest to the levies to pay those parts of the judgment for sheriff's fees and expenses.
RILEY, J., absent. *Page 443